**FLEMING v. HARRISON et al.**

No. 13469.

Circuit Court of Appeals, Eighth Circuit.

July 28, 1947.

Leonora S Gruber, of New York City (William E. Remy, David London, Albert M. Dreyer, Walter D. Murphy, all of Washington, D.C., Leonard M. Cox, of Dallas, Tex., and James D. Dockery, of St. Louis, Mo., on the brief), for appellant.

John T. Sluggett, of St. Louis, Mo., for appellees.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This action was brought by the Price Administrator, Office of Price Administration (for whom the appellant has been substituted), upon the claim that between November 4, 1944, and June 27, 1945, the defendants (appellees) made various sales of softwood lumber (fir, Mexican pine, and southern pine) at overceiling prices, and that the total overcharges amounted to $3,487.85. The plaintiff asked for an injunction and for treble damages. Sections 205(a) and 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(a) and § 925(e). The defendants de-

nied that the sales were made at overceiling prices. The issues were tried to a jury. At the close of the plaintiff's evidence, the defendants made a motion for a directed verdict, which was granted. This appeal is from the judgment entered upon the verdict.

The question for decision is whether the plaintiff's evidence made a prima facie case for the recovery of statutory damages. The injunction feature of the case became moot on removal of price controls on lumber.

The defendants own and operate a lumber distribution yard in St. Louis, Missouri. At the time of the sales in suit, the defendants' maximum prices were established by Second Revised Maximum Price Regulation 215 (8 F.R. 14,145), entitled "Distribution Yard Sales of Softwood," which will be referred to as "the Regulation." The Regulation applied to sales out of distribution yard stock of any lumber or lumber products for which "direct mill" maximum prices were fixed in certain specified price regulations, including (a) Southern Pine Lumber, 2nd Revised M.P.R. 19; (b) Douglas Fir and Other West Coast Lumber, R.M.P.R. 26; and (c) Western Pine and Associated Species of Lumber, M.P.R. 94. The Regulation established maximum prices for sales of the "wholesale type" and sales "other than wholesale type," a higher maximum price being established for the latter. The sales in suit were "other than wholesale type." For such sales, the maximum price (§ 5 of the Regulation) consisted of the sum of the following: (1) the f.o.b. mill maximum price established by the mill regulation for the particular species of lumber at the time of delivery by the distribution yard; (2) inbound transportation charges to the distribution yard, computed according to a formula set forth in § 7 of the Regulation; (3) a "handling charge" of $5 per thousand board feet; (4) the appropriate "area percentage markups" specified by § 5 of the Regulation to be applied to the sum of (1), (2) and (3).

Upon the trial the plaintiff introduced the defendants' delivery receipt covering each of the sales of lumber involved. These receipts showed the invoice numbers, the names and addresses of purchasers, the

dates of sales, the description of the lumber by species and grade, and the price charged. These records of the defendants were identified by an investigator of the Office of Price Administration. whose duties were "to follow complaints and routine checks of lumber yards and saw mills, and determine whether they were charging overceiling prices." The investigator was qualified to perform those duties. He testified that during the months of June and July, 1945, he made a check of defendants' sales. He produced three tabulations made by him, or under his supervision, containing the information appearing on the delivery receipts with respect to sales of each type of lumber, and three additional tabulations showing sales price, his calculations of maximum price, and amount of overcharge with respect to each transaction listed. He testified in detail as to the method used by him in computing maximum prices. The tabulations were all received in evidence. They indicated overcharges amounting to $3,476.44.

At the close of the plaintiff's case, the defendants asked for a dismissal and for a directed verdict in their favor. They elected to offer no evidence. The court reserved its ruling. The plaintiff then moved the court to direct a verdict in his favor that the single amount of the overcharges was $3,476.44. At the direction of the court, the jury returned a verdict for the defendants. A subsequent motion of the plaintiff to set aside the directed verdict for the defendants and the judgment entered thereon and to have judgment in his favor, was denied.

■ The record does not show specifically why the court directed a verdict for the defendants. The plaintiff points out that in their motion for a directed verdict the defendants failed to state the grounds upon which they relied, as required by Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. However, no point was made of this omission at the trial. There is no rule requiring a trial court to submit a case to a jury where a party has failed to produce evidence which would support a verdict.

The defendants assert that the plaintiff failed to prove the following essential facts: (1) that the defendants sold the particular kind and species of lumber covered by the Regulation; (2) the location of the mill or mills from which it was shipped to defendants; (3) the point at which the defendants delivered the lumber; (4) that the persons to whom the sales were made had not instituted suit against the defendants under § 205(e) of the Emergency Price Control Act of 1942, as amended.

■ The plaintiff contends that, under the pleadings and at the trial, no issue as to the applicability of the Regulation to the sales in suit was raised by the defendants, and that the only genuine issue was whether and to what extent, if any, the defendants' prices were in excess of maximum prices. There is a substantial basis for this contention. The defendants did not specifically deny in their answer the applicability of the Regulation to the sales in suit, nor does the record show that at the trial any contention was made that the lumber sold was of a kind or species which was not subject to the Regulation. While we should hesitate to rule that the failure of the defendants definitely to raise the issue precluded them from showing, if they could, that the lumber sold was not covered by the Regulation (and that, for that reason, the prices charged were not excessive), we think it did excuse the plaintiff from introducing proof upon an issue which was not clearly raised and which was peculiarly within the knowledge of the defendants.

■ That the plaintiff was justified in assuming that no genuine issue as to the applicability of the Regulation to the sales in suit was present is further indicated by a stipulation made by the parties with respect to transportation charges. At the opening of the trial, Mr. Brown, one of the counsel for plaintiff, stated in open court:

"I understand from counsel for defendants, Your Honor, that it is admitted that on southern pine lumber the carload freight rate from Alexandria, Louisiana, to St. Louis, Missouri, was 31 cents per hundredweight; on Mexican pine lumber carload freight rate was 72 cents per hundredweight

from Susanville, California, and on fir lumber the carload freight rate was 75½ cents per hundredweight from Portland, Oregon; that those rates were applicable to the sales made by the defendants, as set out in the Complaint.

"Is that right, Mr. Sluggett [counsel for defendants]?

"Mr. Sluggett: That is correct, Your Honor."

We think that this concession on the part of defendants indicated, at least prima facie, that the southern pine lumber came from Alexandria, Louisiana, the fir lumber from Portland, Oregon, and the Mexican pine lumber from Susanville, California, and that the freight rates specified were to be applied in ascertaining the applicable maximum prices in accordance with the Regulation. This is not to say that if the fact was that the lumber was of a kind or species not covered by the Regulation, the defendants would have been precluded by this stipulation from showing that fact as a matter of defense.

■ The failure of the plaintiff to negative all possibilities, contingencies and exceptions which might have affected the application of the Regulation or the permissible maximum prices did not, in our opinion, justify the District Court in directing a verdict for the defendants. The plaintiff's evidence was persuasive that the sales in suit were covered by the Regulation and were made at prices in excess of the maximum. See Augustine v. Bowles, 9 Cir., 149 F.2d 93, 96, 97. Compare Chamberlain v. Fleming, 8 Cir., 160 F.2d 804, 805, 806. The origin of the lumber, its kind and quality, the mills from which it came, and the points at which it was delivered, and whether the purchasers had brought actions against the defendants under § 205(e), were all matters peculiarly within the knowledge of the defendants. If the claim of the plaintiff was based upon an erroneous assumption, due to the existence of some contingency or exception which took the sales out of the scope of the Regulation or deprived the plaintiff of the right to maintain his action, the defendants could readily have shown that to be the case and put an end to this litigation.

■ The applicable rule is stated in Selma, Rome and Dalton Railroad Co. v. United States, 139 U.S. 560, 567, 568, 11 S.Ct. 638, 640, 35 L.Ed. 266, as follows: "* * * While the general rule is that the burden of proof is where the pleadings place it, namely, upon the party against whom judgment must go, if no evidence whatever is introduced, its application is often affected by circumstances. 'From the very nature of the question in dispute,' says Mr. Best, 'all, or nearly all, the evidence that could be adduced respecting it must be in the possession of, or be easily attainable by, one of the contending parties, who accordingly could at once put an end to litigation by producing that evidence; while requiring his adversary to establish his case, because the affirmative lay on him, or because there was a presumption of law against him, would, if not amounting to injustice, at least be productive of expense and delay. In order to prevent this, it has been established as a general rule of evidence that the burden of proof lies on the person who wishes to support his case by a particular fact which lies more peculiarly within his knowledge, or of which he is supposed to be cognizant.' 1 Best, Ev. § 274; 1 Greenl. Ev. § 79; 2 Starkie Ev. 589." See, also, United States v. Denver & Rio Grande Railroad Co., 191 U.S. 84, 92, 24 S.Ct. 33, 48 L.Ed. 106; Mammoth Oil Co. v. United States, 275 U.S. 13, 51, 53, 48 S.Ct. 1, 72 L.Ed. 137; Board of Commerce v. Security Trust Co., 6 Cir., 225 F. 454, 459, 20 Am. Jur., Evidence, § 139, page 145; 31 C.J.S., Evidence, § 113, p. 721.

■ Our conclusion is that the District Court erred in directing a verdict for the defendants. The plaintiff asks that on remand of this case we direct the District Court to enter judgment in his favor for the amount of the overcharges and such additional statutory damages as the court may allow. A retrial of this case will be of no advantage to the defendants unless they are in a position to show that their liability is less than the amount for which the plaintiff is willing to accept judgment. If

the defendants can show that their liability is less than the amount demanded by the plaintiff, we think they should be afforded an opportunity to do so. What further proceedings should be had in this case, may, we think, appropriately be left to the sound judicial discretion of the District Court.

The judgment appealed from is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.