Joseph F. O'BRIEN
v.
UNITED STATES.
No. 146-58.

United States Court of Claims.
Dec. 1, 1960.

Edward L. Metzler, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

DURFEE, Judge.

The plaintiff, a veteran preference eligible, sues for the salary of an attorney in the Department of Justice from the date of his removal for the efficiency of the service, January 8, 1954. He claims that his removal was procedurally defective in that he was not afforded all of his statutory rights under section 14 of the Veterans' Preference Act of 1944, as amended.[1] On September 4, 1953, he received a notice of proposed removal from Assistant Attorney General Burger setting forth four charges. During the ensuing month he replied to the charges by letter and several written memoranda. On October 9, 1953, he was granted an interview with the first assistant to the Assistant Attorney General. Thereafter, the Assistant Attorney General recommended to the Deputy Attorney General that the plaintiff's employment be terminated and this was done, the plaintiff being notified that the charges against him were sustained.

Pursuant to an appeal to the Civil Service Commission, an investigation and hearing were conducted. On June 28, 1954, the Commission sustained three of the four charges against plaintiff and upheld the termination of his employment. After an adverse decision by the Commission's Board of Appeals and Review, plaintiff attempted to have the case reopened but was informed that this was not warranted and that he had exhausted his administrative remedy. This occurred on June 29, 1955. Plaintiff instituted suit for restoration to his position on March 27, 1958, in the District Court for the District of Columbia,[2] and the instant action in this court on April 4, 1958.

The plaintiff fails to allege that the proceedings before the Civil Service

Keith L. Seegmiller, Washington, D. C., for plaintiff.

[1]. 58 Stat. 387, 391; 5 U.S.C.A. § 863.

[2]. The action of the district court in dismissing plaintiff's complaint was affirmed by the Court of Appeals for the District of Columbia. O'Brien v. Rogers, 106 U. S.App.D.C. 36, 269 F.2d 227.

Commission were deficient in any respect. He also fails to allege that its determination or the agency action was arbitrary or capricious. That is the only situation in which we would have the power to review the merits of the agency action. Dulcy v. United States, Ct.Cl., 284 F.2d 687; Vaughn v. United States, 1958, 158 F.Supp. 716, 141 Ct.Cl. 208. This defect, however, is not dispositive of the case. If it were, we would probably permit the plaintiff to amend his pleadings but in this law suit such an amendment would not help him to prevail.

In addition to disclaiming any violation of plaintiff's rights as a veteran, the Government asserts that he has been guilty of *laches* in bringing his claim before us. For almost three years after the Civil Service Commission's refusal to reconsider, plaintiff was either engaged in attempting to obtain documents from the Department of Justice (he was consistently refused) or to obtain redress through extra-judicial channels. We think that it must have been immediately clear to the plaintiff that the Government had no intention of dealing with him outside of recognized legal forums. Moreover, the remark by the Civil Service Commission that he had exhausted his administrative remedies was a green light to him to take his grievances to the courts. His subsequent delay resulted in serious prejudice to the defendant, which has employed another attorney in plaintiff's former position for a substantial portion of this period. We think a strong case for the application of *laches* is made out. However, since this case presents several substantial questions which should be answered, concerning the meaning of section 14 of the Veterans' Preference Act, supra, and the resultant decisions of this court, we do not believe it should be disposed of by invoking that doctrine.

■■ First, plaintiff says that he was denied the personal hearing guaranteed him by section 14 of the Act. That section provides, in pertinent part:

"No * * * preference eligible * * * shall be discharged * * *

except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose discharge * * * is sought shall have at least thirty days' advanced written notice * * * stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing * * * and shall have the right to appeal to the Civil Service Commission * * *."

The failure of personal hearing allegedly occurred when the plaintiff was not granted an interview with the Assistant Attorney General who preferred the charges but rather with his first assistant.

In Washington v. United States, 1957, 147 F.Supp. 284, 137 Ct.Cl. 344, petition for certiorari dismissed 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19, we held that the right to answer charges personally, described in section 14 of the Act, meant that a veteran must be given the opportunity to appear before his agency superior to present matters in extenuation or mitigation. At page 288 of 147 F.Supp., at page 350 of 137 Ct.Cl., the Chief Judge, speaking for a unanimous court, said, "[i]n employment relations particularly, mitigating circumstances, often of a highly personal nature, may save a job for a person who, but for these circumstances, would and should be discharged. * * * And Congress knew, as we all know, that bureaucratic superiors, like other human beings, are susceptible to the effects of personal appeals."

Apparently, plaintiff believes that his bureaucratic superior denied him the opportunity to make a personal appeal when he delegated to a subordinate the task of hearing plaintiff's oral presentation. We cannot agree. No decision of this court has suggested what form the personal interview at the agency level ought to take, except to indicate that there is no right to an adversary type hearing at this stage. Hart v. United States, Ct.Cl., 284 F.2d 682. Certainly,

anything that the plaintiff might have presented to the Assistant Attorney General he could have presented to his assistant who prepared an extensive memorandum following the interview. It is true that this delegate did not have the power to hire and fire the plaintiff, but neither did the Assistant Attorney General. He merely made his recommendations to the Deputy Attorney General after having considered, we must presume, any material which plaintiff had presented at the personal interview. We believe that the procedure followed with respect to the agency hearing was in full compliance with the statute. We do not think that the statute guarantees a veteran an interview with any particular official as long as he is given the opportunity to present such appeals as he may wish to make to a superior who has the authority to either recommend or take final action.

 Plaintiff next asserts that he was not informed of all the charges against him and that his discharge was attributable, at least in part, to these additional charges. This stems from the inclusion in the file on his proposed discharge of a memorandum from his immediate superior to an intermediate official indicating a belief that plaintiff was "incompetent," guilty of "hypocrisy and bullying" and of a "fantastic lie," and was "characteristically cowardly" in certain actions. These remarks, of course, were made in a fashion so lacking in specificity as to preclude any interpretation of them as charges. Indeed, had they been offered as charges, we doubt that they could have been sustained for that reason. There is no indication that these remarks, amounting to an evaluation of plaintiff's character by his boss, were viewed as charges or specific deficiencies or that plaintiff's removal can be traced to them. On the contrary, an affidavit of the Deputy Attorney General shows that although he saw the memorandum containing the derogatory remarks he "did not give consideration to any reason for dismissing Mr. O'Brien other than those specified in said letter of charges." In any situation in which an

employee's discharge is contemplated, it is inconceivable that the employer will not have some personal evaluation of that employee's character, from no matter what source derived. But if all of the charges believed by the agency to justify dismissal are made known to the employee and he is given the opportunity to answer them, and if the decision to retain or release him is made on those charges only, the letter and the spirit of the statute have been strictly complied with.

 Finally, the plaintiff complains that he was involuntarily placed on annual leave for a part of the period between the date of charges and the date of removal and that this action interfered with his ability to answer the charges, that it was contrary to law, and that it in some way serves to vitiate the removal. The fact is that there is no indication that plaintiff was unable to prepare his defense to the stated charges because of this enforced leave. Furthermore, the period of enforced leave was, at the maximum, three work weeks during an advance notice period of over four months. It will be seen that plaintiff was in a pay status for well over the 30-day notice period provided for in the statute. It is true that we have awarded pay to veterans who were placed on annual leave during the 30-day notice period. But that pay was for the period of enforced annual leave only and we expressly indicated that the invalidity of the enforced leave did not constitute a violation of the procedural safeguards of the statute. Armand v. United States, 1956, 136 Ct.Cl. 339; Kenny v. United States, 1956, 145 F.Supp. 898, 134 Ct.Cl. 442, certiorari denied 352 U.S. 893, 77 S.Ct. 131, 1 L.Ed.2d 86; Taylor v. United States, 1955, 131 Ct.Cl. 387. As to this matter, therefore, the plaintiff has not been deprived of any of his legal rights.

 This leaves us, then, with one question remaining to be answered. Must the plaintiff be paid for those days on which he was involuntarily required to consume accrued annual leave?

The Civil Service Commission regulation in effect at the time of plaintiff's removal[3] provides, in part:

"* * * that in any case of a proposed adverse action the employee may be placed on annual leave without his consent where the administrative office does not consider it advisable from an official standpoint to retain him in an active duty status during the period of advance notice."

The court in the Taylor, Kenny, and Armand cases did not have before it the question of whether this regulation, promulgated under section 19 of the Veterans' Preference Act of 1944,[4] was inconsistent with or inimical to the Act. The plaintiff in this case makes no such claim nor has he questioned the appropriateness of the exercise of discretion in the agency's application of the regulation either before the Civil Service Commission or before us.

We must conclude, accordingly, that plaintiff has not been deprived of the value of his accrued annual leave since the leave period was ordered under a regulation validly promulgated under statute. Since we have determined that plaintiff's procedural rights were not violated and in view of the fact that review of the Civil Service Commission's action sustaining the charges is neither permitted nor sought, plaintiff's motion for summary judgment must be denied and defendant's motion for summary judgment must be granted. The petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and WHITAKER, Judges, concur.

3. 15 Fed.Reg. 9139; 5 C.F.R. § 22.2 (Cum.Pocket Supp.1954).

4. 5 U.S.C.A. § 868.