**Robert D. PATERSON**

v.

**The UNITED STATES.**

No. 355–60.

United States Court of Claims.

July 12, 1963.

John I. Heise, Jr., Washington, D. C., for plaintiff.

Joan T. Berry, Washington, D. C., with whom was John W. Douglas, Asst. Atty. Gen., for defendant. Glenn E. Harris, Washington, D. C., was on the brief.

Before WHITAKER, Acting Chief Judge, REED, Justice (Ret.), sitting by designation, and LARAMORE, DURFEE and DAVIS, Judges.

DURFEE, Judge.

Plaintiff has moved for summary judgment in this action in which he seeks to recover salary for two periods of wrongful separation from his job with the Post Office Department. The first period is from June 21 to September 30, 1957, the date on which plaintiff was requested to return to duty as a result of a decision by the Civil Service Commission Board of Appeals and Review on September 18, 1957, holding that he had been improperly dismissed.

Plaintiff also seeks recovery for salary after October 3, 1958, the date on which he was removed from his job as Regional Vehicle Manager in the St. Louis, Missouri area. Plaintiff is a ten-point preference eligible under the Veterans' Preference Act of 1944, 58 Stat. 387, as amended, 5 U.S.C. § 851 et seq. He claims his removal was procedurally defective because he was not given the personal hearing required by section 14 of the Act, which provides as follows:

" * * * such preference eligible shall be allowed a reasonable time

for answering the same [the charges preferred against him] personally and in writing."

The facts relevant to plaintiff's October 3, 1958 dismissal are as follow. During the last week in February, 1958, Postal Inspectors Schroeder and Taaffe questioned plaintiff in his St. Louis office about his work over the past years. Plaintiff answered the questions put to him. On March 3, the inspectors returned with a stenographer to hold a recorded interview. Plaintiff felt, and rightly so, that his job efficiency was in question, and told the inspectors that he did not care to give sworn testimony without the aid of counsel, and that he "would like to be in a position to explain personally any questioned action to [his] superiors."

On March 13, 1958, the inspectors issued a letter to plaintiff containing nine charges. The letter also gave plaintiff 30 days' notice that the Department proposed to remove him or to take other disciplinary action against him. On March 20, plaintiff telephoned James B. Tunny, Regional Operations Director, and plaintiff's operation superior, requesting an opportunity to talk personally with Tunny about the case. This request was denied. Plaintiff then engaged an attorney who, on April 9, 1958, presented Inspector Taaffe with a written request to examine the statements used against plaintiff. At this time the attorney was informed that plaintiff would be allowed a personal appeal before the two inspectors, at which time he could present his story orally but could not confront or cross-examine the persons whose statements constituted the factual basis of the charges against him.

On April 15, 1958, plaintiff answered each charge in writing. In his answer he stated that a hearing before the two inspectors would not be desirable. However, he renewed his request for a personal hearing before his superiors as follows:

"If [the charges] are not dropped, then * * * I respectfully request that I be afforded the opportunity of a hearing before the Administrative Official or Officials who will make the final decision of the action to be taken on these charges, at which the persons who would testify against me concerning the matters charged may come forward and give such testimony under oath before my face, and submit to cross-examination, and at which time witnesses may actually be heard in my behalf."

On September 25, 1958, Tunny wrote plaintiff that seven of the nine charges had been sustained and that he would be removed, effective October 3. The following day, September 26, plaintiff again telephoned Tunny and requested a personal interview. The request was denied. On September 30, 1958, plaintiff made a written request to Tunny to have the latter reconsider his decision. Plaintiff also asked for a "fair hearing." Tunny, on October 1, advised plaintiff "that nothing can be accomplished in a discussion of the circumstances which led to such decision."

Plaintiff's removal was subsequently affirmed by the Civil Service Commission Board of Appeals and Review on October 16, 1959. The Board's decision was in turn affirmed by the Commission itself on April 15, 1960.

Defendant makes two arguments. First, that the personal hearing before the two postal inspectors—which plaintiff refused—would have met the section 14 requirement of a personal appeal at the agency level. Secondly, defendant argues that plaintiff waived his right to a personal appeal when he requested a trial type hearing with witnesses and cross-examination. We do not agree with either of these arguments.

■ We hold that the right, as provided in section 14 of the Veterans' Preference Act, to answer charges "personally" is not met by an appearance before investigators charged with the duty to develop the facts to substantiate the charges they, themselves, have drawn up, where the investigators are not supervisors of the employee being charged,

nor even superior to him in the chain of command within the agency. Thus, the hearing before the two postal inspectors is not the personal hearing due plaintiff under the statute. True, plaintiff was informed by the inspectors that if he discussed the charges with them, they would report any mitigating circumstances to Tunny. But since Tunny was the person making the decision of whether or not to dismiss plaintiff, the procedure suggested by the inspectors would seem to vitiate the advantages of a personal conference. These advantages were spelled out by this court in Washington v. United States, 137 Ct.Cl. 344, 350, 147 F.Supp. 284, 288 (1957):

> "To 'answer' to charges, or claims, one need not necessarily plead the general issue, denying that he did the things which he is alleged to have done. He may plead in confession and avoidance, and that is an answer, in law, and in life. In employment relations particularly, mitigating circumstances, often of a highly personal nature, may save a job for a person who, but for these circumstances, would and should be discharged. Whether, if the plaintiff had been permitted to make this kind of *a personal appeal to his superior*, it would have saved his job, we do not know. But when Congress gave to the veteran the right to appear personally, it must have intended to give him the chance of succeeding in such an appeal. The naked facts, without the personal appeal, could be just as well stated in writing. And Congress knew, as we all know, that *bureaucratic superiors*, like other human beings, are susceptible to the effects of personal appeals." [Emphasis added.]

Throughout the above, the court considers the personal appeal as one to be made to the employee's superior. We think this is a proper reading of section 14. To hold that the requirement is met by a personal appeal to the internal investigative force of the agency is to completely ignore the requirement of fair play implicit in section 14, as interpreted by this court in the Washington case, supra. We can think of no surer way to destroy the intended effect of the personal appeal requirement of section 14 than to allow the agency to bring in special investigators (a) to make an investigation, (b) draw up charges, (c) comment on the employee's answers to these charges, and then (d) to conduct the personal interview afforded the employee under the act.

■ There is little substance to defendant's second argument, *viz.*, that plaintiff waived his right to a personal appeal. It is true that plaintiff did request that he be confronted by and have a right to cross-examine the Post Office Department's witnesses. But he also made it abundantly clear that he wanted to confer personally with his supervisor, Tunny. In his last, and written, request on September 30, 1958 plaintiff asked for a "fair hearing." The English language would not be strained if "fair hearing" were interpreted to mean a personal conference with plaintiff's superiors at the agency level, as required by section 14 of the Veterans' Preference Act. (5 U.S.C. § 863.) There seems to be nothing in the record indicating that Tunny ever considered plaintiff entitled to a personal hearing before anybody except the two postal inspectors. And there clearly is nothing in the record indicating that Tunny thought plaintiff waived his right to a personal appearance before his superiors by merging his request with a demand for a trial type hearing.

The spirit of section 14 of the Veterans' Preference Act would be thwarted if this court were to find an implied waiver in plaintiff's telephone calls and written requests for a personal appeal before his superiors. Of course, it is conceivable that a veteran such as plaintiff might waive this right in writing. Similarly, his actions might add up to a waiver. Cf. Williams v. Zuckert, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed. 486 (1963), where the petitioner claimed that his "discharge

was vitiated by an improper denial of a right to cross-examine at his hearing," but where the Court found that

"Although amply notified in advance of the nature of the charges, the names of the witnesses whose affidavits had supplied the factual basis for his dismissal, and the date of the hearing, neither petitioner nor his counsel made any request, prior to the hearing, of the Air Force, of the Commission or its examiner, or of the witnesses themselves, for their appearance for cross-examination. The request for production of the witnesses, made only at the hearing by petitioner's counsel, was neither timely nor in conformity with the applicable regulations, which contemplate that the party desiring the presence of witnesses, either for direct examination or cross-examination, shall assume the initial burden of producing them."[1]

There are no facts in the case at bar on which to base an implied waiver to a personal appeal, Williams v. Zuckert, supra, notwithstanding.

 Plaintiff, therefore, is entitled to recovery for the amount of salary lost since October 3, 1958, the date of his improper removal, less any money earned from other employment. He is also entitled to recover for the period between June 21 and September 30, 1957, since the Civil Service Commission Board of Appeals and Review held that he had been improperly dismissed during this period. We know of no other way to make an employee whole, where he has been improperly dismissed, than to award him a money judgment equal to the salary lost. During part of this period plaintiff was on enforced annual leave. However, that does not reduce the Government's responsibility to pay him salary for the full period of wrongful suspension. Compare Hart v. United States, 148 Ct.Cl.

10, 16–17, 284 F.2d 682, 686 (1960), where this court said:

"Plaintiff received compensation during the period of enforced absence, but through the device of charging the check against her annual leave account she was deprived of her pay. Plaintiff had earned this annual leave to be applied for her benefit when and where necessary. No part of this leave was designed to enable her agency superiors to summarily separate her from the payroll with impunity."

Plaintiff's motion for summary judgment is granted, and defendant's like motion is denied. Judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Rule 38(c).

REED, Justice (Ret.), sitting by designation, dissents. Cf. O'Brien v. United States, 151 Ct.Cl. 392, 284 F.2d 692, 694–695.

---

1. On rehearing, the Supreme Court remanded Williams v. Zuckert, supra, for determination of further factual issues as to production of witnesses at the agency hearing. 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963).