Andrew **CONNOR**, Plaintiff-Appellant,

v.

**UNITED STATES CIVIL SERVICE COMMISSION**, Defendant-Appellee.

No. 82–5571.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1983.

Decided Nov. 28, 1983.

---

Alvin T. Prestwood, Claude P. Rosser, Jr., argued, Prestwood & Rosser, Montgomery, Ala., Robert E. Harrison, Harrison & Goin, Scottsville, Ky., for plaintiff-appellant.

Ronald E. Meredith, U.S. Atty., Louisville, Ky., David L. Huber, Hancy Jones, Asst. U.S. Attys., argued, for defendant-appellee.

Before ENGEL and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Dr. Connor appeals from the decision of the Federal Employee Appeals Authority (FEAA) terminating his civilian employment with the United States Army. The FEAA conducted a full hearing and considered several charges lodged against Dr. Connor. The charges upheld by the FEAA dealt with plaintiff's failure to adequately prepare reports assigned to him, insubordination, and refusal to cooperate with Army personnel. His challenge in district court was denied.

Here, Dr. Connor challenges the substance of the claims against him, the procedural due process afforded him in the pro-

ceedings below, and the severity of his punishment.

■ The scope of our review is governed by 5 U.S.C. § 706. A government agency's discharge decision must be upheld when supported by substantial evidence and when not arbitrary and capricious. *See Elliott v. Phillips,* 611 F.2d 658 (6th Cir.1979). Reviewing this record we find substantial evidence to support the decision. We find no support for the argument by Dr. Connor that he was prejudiced because the officer directly in charge was not physically present when he was first advised of the charges against him. *See Pascal v. United States,* 543 F.2d 1284, 211 Ct.Cl. 183 (1976).

■ In the hearing before the Federal Employees Appeal Authority, the following five charges against Dr. Connor were sustained; all others were dropped:

(1) Item (c): [Dr. Connor] failed to adequately prepare a report on the Remotely Monitored Battlefield Sensor System (REMBASS) program.

(2) Item (d): [Dr. Connor] failed to adequately prepare a report to be presented at a conference in Fort Leavenworth, Kansas.

(3) Item (e): [Dr. Connor] failed to incorporate his comments into a report after being instructed to do so.

(4) Item (f): [Dr. Connor] held an unauthorized meeting concerning Army burglar alarm systems despite being told all discussions concerning the topic were over.

(5) Item (g): [Dr. Connor] had refused to cooperate with an Army security officer searching for classified documents, and that he had left his work location without permission.

A review of the record shows substantial evidence exists to support all of these charges. Regarding the first three, testimony was solicited from Dr. Connor's supervisors and other Army personnel detailing the inadequacy and poor quality of his submitted reports. The record also establishes he was notified about the inadequacies, but nevertheless failed to upgrade his submitted materials to a satisfactory level. Finally, it cannot be said, as he claims, that the Army's charges were subjective in nature or were too conclusory. Considerable evidence existed to support the FEAA's conclusion that his submitted reports were wholly insufficient in light of the time spent on the reports by Dr. Connor and his familiarity with the topics he was assigned to review.

Regarding the fourth charge, the FEAA hearing officer rejected Dr. Connor's contention that an unidentified telephone caller told him to ignore previously issued orders regarding further discussions on the burglar alarm system. We cannot say, as a matter of law, that the hearing officer's conclusion on this charge was arbitrary or capricious. *Goodman v. United States,* 424 F.2d 914 (D.C.Cir.1970); 5 U.S.C. § 706(2)(A).

The fifth charge is also supported by substantial evidence. It is undisputed that Dr. Connor failed to open his safe when first requested to do so by a security officer in charge of collecting classified documents. The second issue under this charge, Dr. Connor's unauthorized absence from his work location, is also supported by substantial evidence. Dr. Connor admitted he was absent, but claimed he had permission to work at home. This testimony was not creditable in the eyes of the hearing officer. Again, we cannot state that the hearing officer's conclusion was not supported by the record. *Goodman, supra.*

■ The final argument by Dr. Connor is that the government failed to afford him procedural due process, as required by certain administrative regulations, and that this disregard of the regulations voids his dismissal *ab initio.* We disagree. Our interpretation of the applicable statutory provisions and case law leads to the conclusion that an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses. *Shaw v. United States*

*Postal Service,* 697 F.2d 1078 (Fed.Cir.1983); *Rasmussen v. United States,* 543 F.2d 134, 140, 211 Ct.Cl. 260 (1976); *Pascal, supra,* 543 F.2d at 1288.

Dr. Connor complains of three procedural irregularities: (1) He was not permitted to address the appropriate officials at his "oral reply" hearing as provided for in 5 C.F.R. § 752.202(b) (1976); (2) The Army was allowed to offer additional documentary evidence not previously disclosed to plaintiff at the FEAA hearing; and (3) Several of his requests for the introduction of specific witnesses and certain documents were unfairly denied by the FEAA hearing officer.

He relies on *Albert v. Chafee,* 571 F.2d 1063 (9th Cir.1977); *McKamey v. United States,* 458 F.2d 47, 198 Ct.Cl. 28 (1972); and *Ricucci v. United States,* 425 F.2d 1252, *reh. denied,* 432 F.2d 453, 197 Ct.Cl. 120 (1970), to support his argument that his removal must be set aside because of the Army's failure to afford him a proper "oral reply" hearing. Dr. Connor's situation is clearly distinguishable from each of these decisions. In *Albert,* the court held that the government's failure to give a discharged employee advance notice of all the charges brought against him, coupled with the trivial nature of the charges, constituted reversible error, requiring his reinstatement. It was also pointed out that Albert did not receive his informal oral reply as requested. Here, Dr. Connor was given advance notice of the charges against him, and these charges were certainly significant.

*McKamey* is also distinguishable. There the Court of Claims found that the government had not afforded a dismissed employee *any* opportunity to reply orally to the charges against him. Dr. Connor cannot complain of similar treatment. He was afforded both an "oral reply" hearing and a full adversary hearing before the FEAA.

Similarly, there is an indication that the dismissed employee in *Ricucci* was given only a perfunctory hearing before his case reached the Court of Claims. *Ricucci,* 425 F.2d at 1256 (concurring opinion). As we note, Dr. Connor was provided with a full

trial-type hearing before his case reached the courts. Moreover, we are disinclined to read *Ricucci* as requiring reversal of an agency's termination decision merely because the discharged employee is confronted with an unresponsive "oral reply" hearing officer, especially when, as here, the discharged employee was provided a full adversary hearing subsequent to his "oral reply" hearing. Like the discharged employee in *Pascal v. United States, supra,* "[Dr. Connor] . . . makes the mistake of believing that any procedural lapse, no matter how unrelated to the end-result, endows him automatically with a right to a judgment and to back-pay." *Pascal,* 543 F.2d at 1288. We are unwilling to adopt such a position.

Similarly, Dr. Connor's second and third claims of procedural error must also fall. A review of the entire record fails to show how he was in any way prejudiced on the merits or deprived of a substantial right as a result of the Army's introduction of additional documentary evidence or the FEAA hearing officer's decision to exclude certain documents and witnesses. His conclusory statements, without further demonstration of actual harm, certainly do not amount to sufficient grounds for reversal of an agency's personnel decision. *EEOC v. Kimberly Clark Corp.,* 511 F.2d 1352, 60–61 (6th Cir.1975), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368. Furthermore, the procedural lapses here did not in any way negate the substantive charges lodged against him, and therefore, must be considered harmless at best. *EEOC v. Kimberly Clark Corp., supra; Buschmann v. Schweiker,* 676 F.2d 352, 358 (9th Cir.1982); *U.S. Steel Corp. v. U.S. Environmental Protection Agency,* 595 F.2d 207, 215 (5th Cir. 1979).

Finally, we cannot state that the Army's decision to remove Dr. Connor from his position was arbitrary, capricious or an abuse of discretion. *Boyle v. United States,* 515 F.2d 1397, 207 Ct.Cl. 27 (1975).

Accordingly, the judgment of the district court is affirmed.

ENGEL, Circuit Judge, concurring.

I respectfully disagree with that portion of the majority order which appears to hold that the regulation providing for an "oral reply" may safely be ignored, or only perfunctorily respected, where there is later provided a full adversary proceeding. I believe that the majority order does not give sufficient heed to the admonition of the Court of Claims in *Ricucci v. United States,* 425 F.2d 1252, 192 Ct.Cl. 1 (1970), that the oral reply provisions have a distinct and important place in the administrative scheme which ought not be lightly disregarded:

> Taking the Regulation and Manual together, in summary, we read them as written for the protection of employees, and meaning that after adequate notice of charges and before dismissal, the accused employee may have an opportunity to discuss his case with an official of his agency. Not only may he state anything he pleases, from the number of mouths he has to feed to the alleged bias of his immediate supervisor, but he may expect help in presenting his case in form of such comments from the other side as would be natural from a person knowledgeable about the case and expecting largely to influence its resolution. Courts could hardly measure out the exact amount of loquacity he could demand, but at least they can discourage choice of an agency representative professionally trained to disclose nothing. Further, he has a right to expect that the 'oral reply officer' will be one whose recommendation would be meaningful, not an empty formality. This would be normally assured if he was one of the deciding officer's circle of staff and line aides and advisers whom he regularly consults in such matters, unless the deciding officer has gone outside that circle for help for the employee's own better protection. In that case the record would show how the outsider's expertise was relied on.

425 F.2d at 1255–56.

Here, the officers who heard Dr. Connor's oral presentation were one Captain Hicks and Mr. William J. Davis, the latter described as a Labor-Management and Employee Relations Specialist in the Civilian Personnel Office at Fort Knox. It would seem that Captain Hicks' primary function was to operate the tape recorder and to ascertain that Dr. Connor understood the nature of what had been done, and his rights with respect thereto. Apparently Mr. Davis was the person designated to receive and consider the oral reply.

Once the technicalities were out of the way, Dr. Conner was permitted to make his statement. The transcript of that statement, or oral reply, covers approximately seven pages, single spaced. There was no real interrogation of Dr. Connor by Mr. Davis and in fact, the absence of colloquy renders the circumstances here very similar to those which in *Ricucci* were found to justify reversal. The record does not reveal precisely what authority Mr. Davis possessed to fulfill the requirement of 5 C.F.R. § 752.202(b) (1976) that the representative available to the hearing "shall ... have authority either to make a final decision on the proposed adverse action or to recommend what final decision should be made." [1] Further, it appears that Mr. Davis did not in fact make any recommendation or final decision, if he was indeed authorized to do so. It appears that he merely transmitted without comment the transcript of Dr. Connor's verbal reply, and also the latter's grievance statement and affidavit concerning the grievance which Dr. Connor requested be made a part of the record. Mr. Davis also noted that Dr. Connor had declined to sign the verbal reply but transmitted it nonetheless.

The order which constitutes the majority decision appears to minimize the importance of the oral reply where it is followed by a full evidentiary hearing. I do not favor this construction of the regulatory scheme but rather, agree with Judge Nichols' observations in *Ricucci* that a preliminary opportunity for reconciliation by per-

---

1. The same provisions are currently incorporated in 5 C.F.R. § 752.404(c)(2) (1983).

sonal confrontation is an essential part of the entire scheme. It is designed precisely to provide an early and informal opportunity to resolve the differences on an amicable basis, thereby resulting in a substantial saving of face, time, and effort. Thus it is not a procedure to be blithely ignored. The record here discloses an oral reply hearing that was dangerously close to the perfunctory hearing that mandated reversal in *Ricucci*. Two differences, however, cause me to concur rather than dissent.

First it does appear, by the title accorded him at least, that Mr. Davis was the type of official who was contemplated by the regulation to hear such an oral answer; he probably had power at least to recommend a final decision if he indeed lacked authority to make it personally. It seems most likely here that it was Colonel Pigg who had that final administrative authority. While the record could certainly have been more clear, Mr. Davis' title suggests that he was better qualified than was the tax fraud investigator designated to hear the plaintiff's "oral reply" in *Ricucci*.

The second and more important difference is the nature of the oral reply actually made by Dr. Connor at the hearing. Dr. Connor commenced by unfairly accusing Captain Hicks of indicating a predisposition against him when Captain Hicks noted for the record the purposes for which the hearing was being held. Thereafter Dr. Connor launched into a diatribe against Colonel Burnett which combined arrogance with a total lack of self-control. Under such circumstances it appears that what might otherwise be considered a perfunctory performance by Mr. Davis was more likely a recognition that nothing that he, Davis, might do would produce any meaningful dialogue between himself and Dr. Connor. I agree with Judge Nichols' observation from *Ricucci* that the courts can hardly "measure out the exact amount of loquacity" the employee can demand and I also agree that the agency should discourage the choice of a representative who was "professionally trained to disclose nothing." *Ricucci v. United States*, 425 F.2d 1252, 1256, 192 Ct.Cl. 1 (1970). While the oral reply hearing in this case may have been a perfunctory exercise, Dr. Connor's own conduct effectively foreclosed any firm conclusion to that effect.

There may be cases in which an employee about to be discharged can be charged with conduct so egregious that the failure to accord him a meaningful oral reply could be deemed harmless error. The particular misconduct with which Dr. Connor was charged, however, does not strike me as that type. An employee genuinely desiring to avail himself of the benefits of an oral reply, as it was contemplated in the regulatory scheme, might have used his time to engage in a colloquy; by reason and persuasion, he might have presented his case informally and eloquently before the officer designated to hear the reply. Had Dr. Connor so availed himself of this opportunity, perhaps Mr. Davis might have been sympathetic to his view and willing not only to make a recommendation, but to make one favorable to Dr. Connor. In view of the intemperate nature of the remarks, however, it is not surprising that the agency official, Mr. Davis, simply permitted the transcript to speak for itself.