Lawrence **JARETT**

v.

The **UNITED STATES.**

No. 301–69.

United States Court of Claims.

July 14, 1971.

Nichols, J., dissented and filed opinion.

**624**

John I. Heise, Jr., Washington, D. C., atty. of record, for plaintiff; Heise, Kyle & Jorgensen, Silver Spring, Md., and Lebovici & Safir, New York City, of counsel.

J. Laurence Heizmann, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant; C. Michael Sheridan, Framingham, Mass., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

LARAMORE, Judge.

Plaintiff in this case is employed by the Merchant Marine Academy as head of the Department of Maritime Law and Economics. His employer, hereinafter referred to simply as the Academy, is under the auspices of the Secretary of Commerce pursuant to the Merchant Marine Act of 1936, as amended, 46 U.S.C. § 1126 (1964). Consistent with regular procedures, the Secretary of Commerce delegated his authority over the Academy to the Maritime Administration and he further delegated the authority to pay the faculty of the Academy to the Director of Personnel. The statutory authority necessary to establish faculty pay plans is acquired directly from section 216 of the Merchant Marine Act of 1936, as amended by P.L. 87–93, section 2, 75 Stat. 212 (1961), 46 U.S.C. § 1126(e) (1964). Said statute and actions taken pursuant thereto form the basis upon which plaintiff invokes the jurisdiction of this court to hear his case under 28 U.S.C. § 1491 (1964).

The background of this case shows that enactment of P.L. 87–93, section 2, *supra*, started an overall reconstruction of the salary structure at the Academy. Said revision of the Merchant Marine Act by P.L. 87–93 was primarily concerned with administrative enrollees at the Academy, but through the inclusion of subsection (e) [1] of the Act, the responsible officials were able to also restructure the salaries of those whose functions were not administrative. This took place through a negotiated agreement entered into by the Maritime Administration and the United Federation of College Teachers (UFCT) in May of 1968.

The agreement was made to cover members of the faculty other than department heads and assistant department heads and provided basically that a

---

1. 46 U.S.C. § 1126(e) (1964).

new salary schedule would be instituted at the Academy to make the salaries of the Merchant Marine Academy comparable or similar to that of the U.S. Naval Academy.[2] As noted, this agreement initially covered faculty members who were not department heads or assistant department heads. However, on June 28, 1968, a similar agreement was reached by the department heads and assistant department heads with certain additions to be noted hereafter.

Both agreements provided for what the parties to this case call "slotting." Simply stated, "slotting" is the process by which an individual is placed in a newly revised salary scheme. This is done by first adopting a new salary schedule and then deciding which slot in the old schedule compares to the new slot in the revised schedule. In our case this decision was made by a committee established pursuant to the June 28, 1968 agreement called the Management Committee. This committee is comparable to the Categorization Committee used by nondepartment heads established by the original agreement. That agreement, together with the additions which made it conform to the plaintiff's job, forms the basis for plaintiff's grievance. Furthermore, because the parties herein used the agreement as a basis for giving subsection (e) of 46 U.S.C. § 1126 (1964) a working nature, we will hereinafter treat that agreement, as amended, with the same respect as we do any other regulation of the Department of Commerce.

Getting back to the developments pursuant to that agreement, it should be noted that the agreement provided in Section II that:

\* \* \* \* \* \*

Those faculty members fully meeting the Maritime Administration qualification requirements of March 1966 (substitution of equivalency in engineering and nautical science depart-

ments will be permitted) for their rank may be converted to a higher rate in the upper pay category for their rank not exceeding the maximum in-hiring rate for the category, or one step above their current rate—whichever is higher—when the upper pay category is determined to be merited based on such factors as demonstrated professional competence and achievement, teaching ability, scholarly activity, and potential for future development.

\* \* \* \* \* \*

The determination of the appropriate category and step shall be made by a committee consisting of one educator outside the U.S. Merchant Marine Academy chosen by management; one educator outside the Academy chosen by the Union; and Irwin Gerard of the Federal Mediation and Conciliation Service.

To make that provision applicable to the department heads and assistant department heads a memorandum was attached. This memo indicated the fruits of the negotiations by the Superintendent of the Academy with the department heads to arrive at a working arrangement for revision of department head salaries. It provided, *inter alia*, that department heads were

[t]o be evaluated by a management committee consisting of Mr. Girard and Captain Foy (sic) in the same fashion and using the same qualification standards which were used in the evaluation of all other members of the faculty. In addition to such criteria, the management committee will consider administrative experience and ability in their evaluation. The management committee will "slot" Department Heads on the Naval Academy adminstrative faculty scale and shall have the right to advance Department Heads up to and including step 47 of

---

**2.** Section I of the agreement, as adopted, stated:

The parties agree to the adoption of the Naval Academy faculty salary schedule through step 48 (as adjusted by 120 per-

cent in recognition of the longer academic year at Kings Point) as the basis for the compensation of Instructors, Assistant Professors, Associate Professors, and Professors.

such administrative faculty scale. (Step 47 on the administrative faculty scale is identical with the maximum in-hiring rate for professors on the upper scale).

\* \* \* \* \* \*

Pursuant to this agreement plaintiff was slotted in step 41. This was a net increase to $20,666 from a step 38 which carried with it a salary of $18,374, plus $500 as compensation for being a department head. This slotting was made by the Management Committee on July 12, 1968 and adopted by the Maritime Administration on the same day.

Plaintiff, who was an educator with five degrees and had been on the faculty of the Academy since 1946, objected to the new slot. Plaintiff felt he had not been slotted properly in view of his rating as "outstanding" with respect to his professional competence, achievements and teaching ability. Consequently, on August 8, 1968, plaintiff filed a grievance pursuant to Administrative Order No. 202–770, issued February 5, 1963 by the Department of Commerce. In accordance with procedures set forth therein, a one-man review committee was appointed by the Acting Maritime Administrator to hear and consider plaintiff's grievance.

Following a hearing wherein witnesses were presented by both sides, the review committee presented its findings of fact to the Acting Maritime Administrator. It should be noted at this point that during the conduct of the hearing the Management Committee presented, among others, two witnesses who later took it upon themselves to evaluate the findings of the review committee.

The evaluations were first made by the Chief of the Compensation Division, Office of Personnel in the Department of Commerce who communicated his comments to the Personnel Officer of the Maritime Administration. The Personnel Officer in turn communicated the former's comments along with his own to the Acting Maritime Administrator who, after undoubtedly considering the above-noted *ex parte* communications, choose not to follow the recommendation of his self-appointed review committee. Moreover, the Acting Maritime Administrator chose to ignore findings by the review committee that indicated improper procedures in the slotting of the plaintiff. It is because of his decision and the resulting denial of plaintiff's grievance that the case is before this court.

■ We first note jurisdiction under our general jurisdiction statute, 28 U.S. C. § 1491 (1964):

The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department \* \* \* in cases not sounding in tort.

This case could come within our jurisdiction by virtue of P.L. 87–93, *supra,* which is an Act of Congress, or the Merchant Marine Act of 1936. Furthermore, and as pointed out earlier, there is a regulation of an executive department involved herein. It is not the normal published type of regulation but because all parties involved treated the agreement to revise the salary structure as a regulation, we shall also accord it the status of a regulation. ·

Having noted jurisdiction for this action, we next consider any and all limitations placed thereon. For the first of such limitations one need not burn the midnight oil to discover the relevance of the Administrative Procedure Act, section 10, 5 U.S.C. § 1009 (1964) (recodified as 5 U.S.C. §§ 701–706 (Supp. IV 1965–68)). This act provides, *inter alia,* that:

§ 701. Applications; definitions

(a) This chapter applies, [to provide judicial review] according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

\* \* \* \* \* \*

§ 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

To paraphrase, the Administrative Procedure Act restricts judicial review of agency actions when the action taken by the agency is pursuant to a statute which, by its terms, precludes judicial review. Furthermore, when the agency action is committed solely to the discretion of the agency, such action is not reviewable. In this case neither restriction applies.

As for the first restriction, the statute in question is the Merchant Marine Act of 1936, *supra*. More specifically we are concerned with subsection (e) of section 216 of that Act found at 46 U.S.C. § 1126 (e) (1964). Although in relation to a different matter, we have previously had occasion to deal with the Merchant Marine Act. *See,* Moore-McCormack Lines, Inc. v. United States, 413 F.2d 568, 188 Ct.Cl. 644 (1969). Through that case, 413 F.2d at 575, 188 Ct.Cl. at page 656, we have enunciated that:

> To preclude judicial review under this bill [the Administrative Procedure Act] a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. (Citing H.R.Rep. No. 1980, 79th Cong., 2d Sess. 41 (1946) on section 10 of the Administrative Procedure Act.)

With this in mind we must then proceed to scrutinize P.L. 87–93, *supra*, to determine if there are any specific prohibitions to judicial review found therein. Neither in the section in question, nor in any other part of the Merchant Marine Act, are we able to find any indication that Congress intended the actions of the Secretary of Commerce to be unreviewable. The section in question states:

(e) Faculty; compensation.

To effectuate the purpose of this section, the Secretary of Commerce is authorized to employ professors, lecturers, and instructors and to compensate them without regard to the Classification Act of 1949, as amended. [46 U.S.C. § 1126(e)]

The most that can be said with respect to any restriction is that the function here in question appears to be discretionary in nature. This will cause further scrutiny into the second restriction imposed by the Administrative Procedure Act, *supra*, but it surely does not indicate to this court that the statute itself precludes judicial review.

Having noted that the statute itself does not preclude our review we must further our endeavors into the second possible restriction. That is, if the action is "committed to agency discretion" judicial review would be barred. This brings up a rather controversial facet of the Administrative Procedure Act, which is discussed in detail in *Moore-McCormack, supra*, but one which need not be elaborated upon at this point. Suffice it to say that were our case built solely upon the review of a discretionary final determination of the Acting Maritime Administrator and nothing more we might be going beyond the limitations as established by the Administrative Procedure Act. *See, e. g.*, Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S. Ct. 752, 2 L.Ed.2d 788 (1958) and Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960). However, our case is not that; we are concerned here with the procedures used to reach a final determination and, therefore, we feel that it is within our power to consider plaintiff's case. That this type of review was within the contemplation of Congress when enacting the section in question is evidenced by the general tone of the legislative history accompanying P.L. 87–93, *supra*. *See generally*, H.R.Rep. No. 542, 87th Cong., 1st Sess. (1961), U.S.Code Cong. & Admin.News 1961, p. 2128. It is clear from a reading of the amendment together with the accompanying congressional statements, that the intent of Congress was to provide the statutory authority for a revision of the salary schedules at the Academy. It is also plain that they intended this to be done

in a fair and equitable manner. Furthermore, we find no indications that this revision should be accomplished free from any and all scrutiny of the methods used. Therefore, since this action is not within the restrictive language of section 701 of the Administrative Procedure Act, *supra*, we must conclude that it is a case coming within section 702, thereby giving plaintiff a right of review. However, before proceeding to discuss the merits of plaintiff's claim there is one other possible restriction that should be noted.

As we have stated previously, in cases where dissatisfied employees have sought a higher rating or a greater amount of compensation, "to grant recovery to plaintiff * * * would in effect bestow upon plaintiff a promotion which he never received." Tierney v. United States, 168 Ct.Cl. 77, 80 (1964). Again, however, we must emphasize that we do not endeavor to review the purely discretionary function of the Secretary and his delegates. We approach this case strictly from a procedural standpoint and confine our review to the methods by which the ultimate conclusions were reached. In doing so we avoid substituting our judgment for that of the agency. It is our opinion that this situation is more in the nature of a reclassification-type case such as was involved in Nordstrom v. United States, 177 Ct.Cl. 818 (1966). In that case we stated:

> Plaintiff is not seeking a promotion— he is seeking the benefits incident to a reclassification, an automatic action which applied to everyone * * *. [supra, at 825]

Likewise in this case; here we are concerned with the slotting procedure which was designed to be equally applied to everyone. The finding that it was not done properly (to be discussed hereafter) distinguishes this case from the promotion type cases referred to earlier wherein all procedural aspects were handled properly. Thus we proceed with plaintiff's case.

In the previous discussion of the developments of plaintiff's case it was noted that the agreement used to effectuate the slotting here in question was basically the same as that used for non-department heads. The agreement was modified by a memorandum which made the agreement used by the faculty apply to plaintiff and those similarly situated. That modification provided that department heads were "to be evaluated * * in the same fashion and using the same qualification standards which were used in the evaluation of all other members of the faculty." Notwithstanding the above modification, the review committee found:

> * * * Rather on its own initiative, the Committee created a four step increase distribution scale not contained in the agreement. The Committee decided that among the seven Department Heads, the top Department Head would receive a four step increase and the lowest one would receive one step * * * by using an advancement system different from that employed with respect to professors and one which restricted the number of steps a Department Head could be advanced, the Committee in effect perpetuated the grade alignment of the past and prevented itself from advancing a highly qualified and competent Department Head to the step his abilities and experience may have warranted irrespective of past ratings.

It is the above-noted finding that the Acting Maritime Administrator chose to disregard when considering plaintiff's grievance. The reason for doing so is wholly within the mind of the Acting Administrator and we can only speculate as to why he would choose to ignore this obvious departure from agreed-upon slotting procedures. Nevertheless we do speculate that a very important reason for doing so was the *ex parte* communication received by the Acting Maritime Administrator subsequent to the review committee report.

As was described earlier, following the report of the review committee, the Act-

ing Maritime Administrator received a memorandum from the Personnel Officer. This memo contained personal conclusions as to the validity of the review committee's findings and indicated such with the following introduction:

\*    \*    \*    \*    \*    \*

Additionally, I wish to advise that the report does not accurately reflect the facts in the following instances.

The memo went on to "correct" the findings and to include similar "corrections" made by another witness for management, the Chief of the Compensation Division of the Department of Commerce.

That consideration of the above-noted *ex parte* communication was in violation of the agency's own regulations is clearly evidenced by the following. Section 5.03 of the applicable grievance procedure, *supra*, provided:

Section 5.03 *Review committee:*

On receipt of a grievance the official authorized to render a decision on it shall designate a review committee of one or more members.

The members of the committee shall be selected in such a manner as to insure that the members will be fair, impartial, and objective. Every effort shall be made to designate persons in whose competence and objectivity the employee can have confidence. No one may serve as member of the review committee who has been, is, or will be otherwise responsible for reviewing or acting upon the subject-matter of the grievance or on the report of the committee.

When the above-noted witnesses voluntarily acted on the evidence presented at the hearing, they were, in effect, serving as a member of the review committee while simultaneously "acting upon the subject-matter of the grievance" which is specifically prohibited by the above-quoted regulation. Thus we consider this conduct no less reprehensible than that described in Camero v. United States, 345 F.2d 798, 170 Ct.Cl. 490 (1965) wherein we held that because of certain *ex parte* communications the action taken in removing the plaintiff may have been improper.

■    Furthermore, and more importantly, we find that this case is clearly violative of the mandate set forth by the Supreme Court in Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). In that case the Court stated:

\* \* \* regulations validly prescribed by a government administrator are binding upon him as well as the citizen, and that this principle holds even when the administrative action under review is discretionary in nature. [354 U.S. at 372, 77 S.Ct. at 1157]

It cannot be disputed then that because the procedure used in this case was not pursuant to the agency's own regulations the action taken cannot stand. First the Management Committee did not follow the agreed upon format embodied in the agreement which was acted upon and treated as a valid regulation. Secondly, the Acting Maritime Administrator considered *ex parte* communications which has been shown to be in violation of regulations prescribed for proper grievance procedures. Therefore, we hold that, due to the aforementioned improper procedures, plaintiff was not afforded fair and equitable consideration in slotting his salary at level 41. We are of the opinion that had the proper procedures been used and absent authorized criticism of the review committee's findings, plaintiff would have been assigned step 46 or 47, including the two-step increase for being a department head. This finding is based not only upon the finding of ultimate fact by the review committee, but also upon the statement of the Dean of the Academy who testified at the grievance hearing that if he had to hire a replacement for plaintiff it could not be done at step 41 and that "it would

probably require the maximum (step 47) to obtain a replacement."

In conclusion, we reiterate that our review is of the procedures used as they were applied to plaintiff. We have found these to be unfair and unreasonable and consequently we deny defendant's motion for summary judgment and grant plaintiff's motion to the extent indicated herein. Therefore, we suspend proceedings in this matter to enable the responsible officials of the Maritime Administration to consider plaintiff's requests in light of this opinion.

NICHOLS, Judge (dissenting):

First, as to jurisdiction: I would hold that we have jurisdiction under 28 U.S.C.A. § 1491(5). I deem it a semantic mistake to call the collective bargaining agreement under which plaintiff sues a regulation. Not every piece of paper emanating from an executive department is a regulation. Donovan v. United States, 139 U.S.App.D.C. 364, 433 F.2d 522 (1970), cert. denied, 401 U.S. 944, 91 S.Ct. 955, 8 L.Ed.2d 225 (1971).

Second, I find it impossible to reconcile the lip-service given to the doctrine the court will not grant discretionary promotions with the language near the end of the opinion which defendant's officials will read as now confining them to an election between steps 46 and 47. If the management committee abused its discretion in arbitrarily excluding plaintiff from consideration for these higher steps, I find nothing in the record to show it did not have discretion to award him a lower one. The court apparently is weighing the evidence and substituting its judgment for that of the Acting Maritime Administrator on disputed facts.

Third, I turn now to the alleged *ex parte* approaches. I dissented in Camero v. United States, 375 F.2d 777, 179 Ct.Cl. 520 (1967), but would deem it a binding precedent here if the facts were the same, but they are not. In *Camero*, we

had an adverse action, taking away a man's job, conceived of as his property, a situation in which due process requirements are more stringent than they are when, as here, the procedures are employed to decide whether the claimant is to receive a benefit. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Moreover this court viewed the Grievance Committee procedure in *Camero* as adversary in nature, an alleged fact on which it laid great stress. The hearing examiner in the deliberations now before us was expressly told *not* to allow his inquiry to become an adversary one. The imposition of due process requirements on a mere inquest is implicit in the decision here and in *Camero* was not. Apparently any executive who wishes to have his decision aided by testimony will endanger the legality of his action unless he develops the entire panoply of a due process hearing.

I assume that no one is entitled under the Constitution to procedural due process in the determination whether he is to get a pay increase. The issue then boils down to the intentions of those who framed the grievance procedure plaintiff invoked; and wrote the regulations under which his hearing was held. Following our rule for contracts (Hegeman-Harris Co. v. United States, 440 F.2d 1009, 194 Ct.Cl. 574 (1971)), I would construe the regulations as they would naturally be construed by the bureaucrats for whose guidance they were written. The court's interpretation would bar the deciding officer from receiving the advice of his own staff. He is so used to the staff system of decision-making that, cut off from their aid, he would feel helpless. Such an unnatural barrier, in a bureaucracy, would require an express declaration to be understood at all, and the regulation here of course expressly said no such thing. The bureaucrat would not, I think, see fundamental unfairness in *ex parte* approaches if they were allowed to both sides. He would know there was no feasible way to prevent aggrieved employees from procuring *ex parte* ap-

proaches, particularly by members of Congress, who would have no way of knowing whether under the internal procedures of the agency *ex parte* approaches were proper or not. They would expect that whatever they had to communicate would receive such consideration and weight as was proper to give it and no more. To allow *ex parte* communications to the aggrieved employee, but to deny them to management, would not impress the bureaucratic decision-maker as fair or equitable. It would be an interesting exercise to attempt to draft a regulation prohibiting *ex parte* communications, such as would be fair to both sides, yet feasible to publish and administer. At any rate, we know that Mr. Kostos in *Camero*, and Mr. Gulick here (the Acting Marine Administrator), both able lawyers, apparently read the regulation as I do and did not, therefore, see anything wrong in the decision maker's receiving assistance outside the hearing from his own staff, whether they had participated in the hearing or not.

I want to be fair with the court majority and therefore will add that certain experiences with this type of grievance procedure, before I went on the bench, cause me to believe that its inventors intended—though they didn't write—that the decision maker would isolate himself as the court says he must. I was such a one, and but for good advice by an astute personnel officer, probably I would have put myself right there in this court's doghouse, with Mr. Kostos and Mr. Gulick. I will admit I was only commencing my present acquaintance with the Byzantine mysteries of government personnel procedure, and was not as familiar with them as this court was and is. This procedure is nothing but a trap for the many who are insufficiently instructed.

I probably would go along with a simple suspension for further administrative proceedings but I cannot join in restricting the agency to steps 46 and 47, nor in the court's animadversions on Mr. Gulick's alleged wrongdoing.