BeNNett, Judge,
delivered the opinion of the court:
The plaintiff in this action was a nonveteran employed in the competitive civil service by the Internal Revenue Service (IRS) as a revenue officer, GS-9, in Baltimore, Maryland, until his discharge from Government employment effective August 29,1967. Plaintiff is now challenging the basis of the discharge and the procedure followed by the IRS in making its decision. He seeks back pay from August 29, 1967 to the date of judgment. For reasons to be detailed, defendant’s motion for summary judgment is granted and plaintiff’s cross-motion is denied.
Prior to his discharge, plaintiff had been employed by the Federal Government for 32 years, the last 26 of which were spent with the IRS. His present status is that of a civil service annuitant. On April 4,1967, the plaintiff was notified that there were several specific areas of his work which needed corrective action. The letter informed plaintiff that he had 90 days in which to show an immediate and sustained improvement in these areas or removal action would be taken. About this time, plaintiff’s group supervisor, Mr. William H. Guba, also caused the plaintiff to be followed by IRS inspectors on several of his workdays out of the office in order to *341 observe tbe nature of his activities. It should be noted at this point that as a revenue officer, plaintiff was expected to spend 3 of every 5 workdays in the field contacting taxpayers to collect delinquent accounts. The remaining 2 days were to be spent in the office arranging schedules and preparing and filing appropriate reports.
Two IRS inspectors followed plaintiff on 6 separate workdays while he was out in the field. Their reports indicated that plaintiff spent several hours each day reading newspapers, eating, napping, daydreaming, conversing with idlers, and otherwise wasting official Government time in places such as bus terminals, the public library, YMCA, a department store lounge, and restaurants, all without apparent connection to his official business and at some locations away from his assigned work zone. Plaintiff has never denied these reports or satisfactorily explained his reported conduct in relation to his duties. Before he was confronted with evidence of his waste of time on duty he falsified on official records that he had spent all of his duty hours on Government business.
Following the report of the inspectors, the plaintiff was notified, by letter of July 12, 1967, of a proposal to remove him. The letter cited five reasons for removal, with specifications listed under each. The reasons mentioned were: (1) misuse of Government time; (2) falsification of official records; (>3) false claim for reimbursement of expenditures; (4) failure to follow prescribed office practices or apply appropriate IRS procedures in collection of taxpayers’ delinquent accounts ; and (h) inaccurate reporting of information on daily work reports.
On July 21, 1967, plaintiff made a detailed written reply to the proposed removal action alleging, among other things, harassment by his supervisor which necessitated his using the time and locations cited in the inspectors’ reports in order to plan and do that work he was otheiwise unable to do during the 2 days in the office and to attend to personal needs. The plaintiff went further by filing a separate grievance against Mr. Guba. A hearing was held with respect to this grievance on July 19 and 20,1967. 'Plaintiff was assisted by legal counsel. *342 The officer who heard the grievance felt that there was no factual basis to support the plaintiff’s complaint and so concluded in a report issued July‘28,1967.
On August 3, 1967, plaintiff, with the aid of legal counsel (one of four employee-union representatives present), presented his oral reply to the five charges to the Assistant District Director of the IRS, who had been delegated to hear the reply by the District Director himself. It appears that Mr. Duehay, the Assistant Director, made an opening statement to the parties, listened to plaintiff’s presentation and then closed with a statement thanking everyone present. On August 7, 1967, Mr. Duehay recommended in a detailed written report to the District Director that the removal action should be sustained, finding that all the charges and specifications had been substantiated. The District Director followed this recommendation and so informed plaintiff by letter dated August 22,1967, making the discharge effective on August 29, 1967.
Following receipt of the letter of August 22, 1967, notifying him of his removal, plaintiff appealed the decision of the IRS to the Philadelphia Regional Office of the Civil Service Commission (CSC), waiving any hearing but designating two attorneys to represent him. The Regional Director issued his opinion on December 5, 1967, sustaining the removal of the plaintiff on both procedural and substantive considerations and to promote the efficiency of the service.
On December 7, 1967, the plaintiff, through his counsel, appealed the adverse Regional decision to the Board of Appeals and Review (BAR) of the CSC. In so doing, plaintiff made no new representations. After the filing of a series of responses by both the plaintiff and the IRS, the BAR issued its decision on March 8, 1968. The Board found that charges Nos. 1, 2, 4 and 5 were sustained by the evidence, throwing out charge No. 3 (false claim for reimbursement of expenditures) involving only a minor claim for bus fare. The BAR ruled that the other charges were fully sustained by the evidence and justified the removal action taken to promote the efficiency of the service.
Plaintiff subsequently filed suit in this court, alleging *343 generally three things: first, the removal action was not supported 'by substantial evidence and was therefore arbitrary and capricious in that it was motivated by the supervisor’s personal animus toward plaintiff; second, the removal was procedurally defective in several ways; and third, the penalty of discharge was far too harsh under the circumstances. Before discussing each of the grounds for recovery advanced by plaintiff, it is necessary to note the role this court plays in examining decisions that come from the CSC and its B'AB.
In Morelli v. United States, 177 Ct. Cl. 848, 858 (1966), this court stated:
* * * Where an administrative agency has complied with the prescribed procedural requirements, the Court of Claims can only review the action to determine whether the officials who effected the dismissal acted arbitrarily, capriciously or were so grossly erroneous as to be in bad faith, as for instance where they may have ■acted without substantial evidence to support their decision or where they exceeded their authority.
Accord, Schlegel v. United States, 189 Ct. Cl. 30, 35, 416 F. 2d 1372, 1374-75 (1969), cert. denied, 397 U.S. 1039 (1970); Holman v. United States, 181 Ct. Cl. 1, 8, 383 F. 2d 411, 415 (1967) ; Love v. United States, 119 Ct. Cl. 486, 493-94, 98 F. Supp. 770, 774, cert. denied, 342 U.S. 866 (1951). In applying this standard of review in civilian pay cases the presumption is that the Government officials have acted in good faith in making their decision. Travis v. United States, 199 Ct. Cl. 67 (1972); Holman v. United States, supra; Morelli v. United States, supra; Greenway v. United States, 175 Ct. Cl. 350, 362, cert. denied, 385 U.S. 881 (1966).
Plaintiff would seek to overcome the presumption of validity by raising the issue of arbitrary and capricious conduct and abuse of discretion by defendant, thus requiring a trial on the merits to establish whether plaintiff was really fired for reasons of malice. Such a contention is not ordinarily appropriate for resolution by summary judgment, absent a stipulation of the parties warranting disposition of the case on procedural grounds. Blackmar v. United States, 128 Ct. Cl. 693, 120 F. Supp. 408 (1954). But, the court looks to the facts and circumstances of each case to determine what con *344 stitutes substantial evidence to support an administrative decision on judicial review. Jacobowitz v. United States, 191 Ct. Cl. 444, 424 F. 2d 555 (1970). Plaintiff bere relies in large part on the allegation that there was extreme personal animus against him by his supervisor. He seeks to prove this by indicating that Mr. Guba maliciously placed unreasonable restrictions on plaintiff’s actions in the office, considering plaintiff’s diabetic condition. This allegation was found to be untrue by the officer who conducted the grievance hearing on July 19 and 20,1967. Should the court even treat the allegation as true, there is abundant credible, independent evidence, divorced from the alleged personality conflict between plaintiff and his supervisor, in the form of the inspectors’ reports and plaintiff’s own admissions thereto, which would justify plaintiff’s discharge by the District Director. This court has said “* * * we start out with the presumption that the official acted in good faith. We are always loath to find to the contrary, and it takes, and should take, well-nigh irrefragable proof to induce us to do so.” Knotts v. United States, 128 Ct. Cl. 489, 492, 121 F. Supp. 630, 631 (1954). Taking his assertions about Mr. Guba as true, plaintiff has not shown that the discharge was arbitrary, capricious or motivated by reasons other than those given in the notice of discharge. Mr. Guba’s attitude toward plaintiff is immaterial to the four charges remaining against plaintiff which are fully supported by the record and are adequate to support his removal from office. Concluding, then, that the decisions of the IES and CSC BAE were amply supported by substantial evidence and that no trial is necessary to flesh out the clear record, the inquiry must turn to an examination of any procedural errors that might have occurred in the process of discharging the plaintiff.
Plaintiff alleges three basic errors in the procedure followed by the IES. Initially, he charges that the oral reply procedure followed by the Assistant Director on August 3, 1967, was inadequate in that the reply officer did nothing more than make an introductory statement, listen to the plaintiff’s presentation, and then conclude the proceeding without having asked any questions of plaintiff or otherwise *345 indicating what the problem areas were via a meaningful dialogue. Second is plaintiff’s charge that it was improper for the reply officer to obtain an ex parte statement from plaintiff’s supervisor, Mr. Guba, without giving plaintiff a chance to respond, and then for him to consider the statement when making the final recommendation to the District Director who made the actual decision. The plaintiff’s third specification of procedural error points to the fact that the areas for plaintiff’s improvement listed in the 90-day letter of April 4, 1967, were different from the five charges listed in the notice of proposed removal issued July 12,1967, and that this was prejudicial. Before going into each of these alleged grounds for error, it should be noted that plaintiff, in selecting his grounds for error to be presented to the CSC and BAR, did not allege error with respect to the oral reply proceeding or the notices. Therefore, the Government argues, plaintiff should not be permitted to raise these issues before this court, since plaintiff has not exhausted his administrative remedies with respect to these alleged errors.
In Haynes v. United States, 190 Ct. Cl. 9, 418 F. 2d 1380 (1969), and Pine v. United States, 178 Ct. Cl. 146, 149, 371 F. 2d 466, 467-68 (1967), this court, citing many precedents, reached precisely the conclusion the defendant presses here. As a general rule, issues not raised before the CSC may not be raised in this court for the first time. In Adler v. United States, 134 Ct. Cl. 200, 203, 146 F. Supp. 956, 958, cert denied, 352 U.8. 894 (1956), the principle was earlier stated:
* * * notwithstanding the fact that the appeal [to the CSC] is not mandatory, we think that an employee must appeal to the Civil Service Commission for an adjustment of his grievances before resorting to the courts, except in wnusual circumstances. [Emphasis supplied.]
The plaintiff in this case would have the court hold that the reason he did not ask for a hearing before the CSC or itemize the procedural errors to the BAR which he now presses before this court was due to “unusual circumstances” like those alluded to in Adler.
Plaintiff argues, specifically, that since he was not repre *346 sented by counsel before the CSC (despite the fact that plaintiff had designated an attorney) he should be excused from the usual requirement that he must exhaust his administrative remedies. Plaintiff continues by contending, in the alternative, that his general complaints with respect to the unfairness and lack of consideration in the oral reply proceedings, coupled with the transcript of the grievance hearing, in effect, placed the issues before the CSC. It would not appear as though either of these contentions would save plaintiff in this case. The exceptions made to the rule that a litigant must first exhaust his administrative remedies generally involve the fault of the Government as well as the plaintiff. Hagarty v. United States, 196 Ct. Cl. 66, 449 F. 2d 352 (1971);[1] Ainsworth v. United States, 180 Ct. Cl. 166 (1967) ;[2] Morelli v. United States, 161 Ct. Cl. 44 (1963);[3] Cunningham v. United States, 161 Ct. Cl. 82 (1963); [4] Mallow v. United States, 161 Ct. Cl. 207 (1963).[5] There is no indication in the facts presented by this plaintiff that his failure to itemize the errors to the CSC, which errors he now advances before the court, was in any way caused by governmental misrepresentations, or otherwise. Plaintiff simply contends that he did not have the active aid of counsel before the CSC and therefore the court should overlook his failure to itemize his errors and thereby exhaust his administrative remedies.
This court cannot accept plaintiff’s argument for several reasons. To begin with, to the extent that plaintiff acted without counsel, it was by his own choice. Pie was never denied counsel as to any of the charges involved in this removal action, or at any level of the proceedings. The Ad *347 ministrative Procedure Act, 5 IT.S.C. § 555(b) (Snpp. III. 1965-67), grants the plaintiff the right to employ counsel if he so desires. At the same time, the Government is not obligated to provide a claimant with counsel before the administrative agency in a civil case. Nees v. Securities & Exch. Comm’n, 414 F. 2d 211, 221 (9th Cir. 1969) ; Boruski v. Securities & Exch. Comm’n, 340 F. 2d 991, 992 (2d Cir.), cert. denied, 381 U.S. 943 (1965) ; Suess v. Pugh, 245 F. Supp. 661 (N.D.V.Wa. 1965). There is no indication that plaintiff was denied opportunity to obtain counsel or could not afford counsel or otherwise have obtained legal advice. In fact, he did designate counsel to represent him, using a form supplied by the Civil Service Commission for this purpose. Counsel noted plaintiff’s appeal to the BAE. If plaintiff chose not to have his counsel continue, there is nothing under these circumstances which should, by itself, require an exception to the doctrine that plaintiff must first have exhausted his administrative remedies before coming to this court.
Somewhat more persuasively, the plaintiff also argues that the absence of active counsel at the final administrative level should lead the court to read plaintiff’s appeal to the CSC broadly and thereby find that, in fact, the proper identification of errors had been made. Plaintiff’s letter to the OS'C simply alleged general unfairness and lack of consideration in the oral reply proceedings, accompanied by the transcript of the plaintiff’s grievance hearing. While courts have taken into account the fact that a party is acting without counsel in deciding how strictly to interpret procedural rules, it seems to go too far in this case, to convert these general complaints of the plaintiff into specific allegations of error by judicial interpretation. To do so would require the CSC to search through records and transcripts to find errors of procedure that might not even exist, whenever a plaintiff alleges general unfairness. The CSC would be forced to second-guess the plaintiff’s case and to do his legal research. It is not appropriate, therefore, under these circumstances, to excuse plaintiff’s failure to exhaust his administrative remedies on the grounds now advanced as to procedural defects in the notices and conduct of the oral reply officer. While thus *348 fatally defective, we will, nevertheless, examine the plaintiff’s charges of procedural error individually, since both parties spent considerable time ably briefing and later arguing these points, which are very important in cases of this kind.
Plaintiff first argues that the Veterans’ Preference Act, 5 TLS.C. § 7512 (Supp. III, 1965-67), and 5 C.F.R. § 752.202 (1968) made applicable to all employees in the competitive civil service, including nonveterans, by Executive Order No. 10988, 3 C.F.R. 130 (1962 Supp.), requires that a discharged employee be given an opportunity to make an oral as well as written reply to the charges in the notice of proposed removal. This is -undoubtedly true. McKamey v. United States, 198 Ct. Cl. 28, 458 F. 2d 47 (1972); Washington v. United States, 137 Ct. Cl. 344, 349, 147 F. Supp. 284, 287, petition for cert. dismissed per stipulation, 355 U.S. 801 (1957). Plaintiff continues by asserting that the oral reply opportunity which he received was ineffective since Mr. Duehay, the oral reply officer, did not conduct a proceeding involving a meaningful dialogue as required by Ricucci v. United States, 192 Ct. Cl. 1, 425 F. 2d 1252 (1970), as he did not ask questions during the reply proceedings or otherwise comment on plaintiff’s presentation except for an opening statement and a closing thank you.
It would seem that plaintiff seeks to limit this court’s opinion in Ricucei. In that case the oral reply proceeding that was held was found to be ineffective, partially because there was no dialogue between the reply officer and the employee, but also because the reply officer was not in a line of authority superior to the employee and who thus might have made a meaningful recommendation to the party who would ultimately make the decision, nor did he have any particular expertise to hear -the matter. The plaintiff here relies merely on the lack of dialogue as his ground for error, apparently recognizing that Mr. Duehay was the Assistant District Director and his immediate superior was the District Director who made the ultimate decision. In Rieueei the court recognized the problem of how much dialogue was to be required by pointing out that:
*349 * * * Courts could hardly measure out the exact amount of loquacity he [the employee] could demand, but at least they can discourage choice of an agency representative professionally trained to disclose nothing. [192 Ct. Cl. at 8,425 F. 2d at 1256.]
Perhaps Mr. Duehay did not extend himself as he might have at the interview but he was not a mere agency inspector without qualifications to hear the matter, like the reply officer in Riaucci. Mr. Duehay was in the direct line of management authority superior to the plaintiff and empowered to make a final recommendation, which he did. There is no reason for this court to find, simply because there was limited dialogue between plaintiff and the reply officer, that his recommendation was meaningless or that the procedure itself was a mere formality acted out for the benefit of the regulations. The reticence of Mr. Duehay is no proof that plaintiff was prejudiced by the officer’s lack of knowledge, understanding, or consideration of his presentation in confession and avoidance. Plaintiff, with the aid of legal counsel, fully presented his own side of the case both orally and in writing. It received careful attention on the merits at every permissible administrative level. Mr. Duehay prepared a 9-page, single-spaced, typewritten report and recommendation on plaintiff’s oral reply, discussing each charge and specification in detail. If Mr. Duehay did not speak extensively for the oral record, it might reasonably be explained by the statement in his report that the “opening statement by the attorney and Mr. Grover’s oral statements did not add anything specific to the written material already furnished by Mr. Grover in his reply dated July 21,1967.” Since plaintiff has not pointed to any other evidence that might support the conclusion he wishes the court to reach, this technical ground for alleged error must be rejected, without, however, condoning the Duehay reticence which contributes to plaintiff’s present concern that his defense to charges may not have been seriously considered.
Plaintiff’s second alleged procedural defect stems from the fact that after the reply proceeding was over, Mr. Duehay, the reply officer, summoned the plaintiff’s superior, Mr. Guba, and received a statement from him without allowing plaintiff *350 to be present or to cross-examine Mr. Guba at that time. The plaintiff contends that the taking of this ex parte statement was a violation of procedural due process. For this proposition, plaintiff cites Jarett v. United States, 195 Ct. Cl. 320, 451 F. 2d 623 (1971), and Camero v. United States, 170 Ct. Cl. 490, 345 F. 2d 798 (1965), 179 Ct. Cl. 520, 375 F. 2d 777 (1967). Both Carmero and Jarett involved regulations which called for evidentiary-type hearings. The oral reply proceeding is not an evidentiary hearing. It is designed to give the employee a chance to present his case on the merits or by means of confession and avoidance to a responsible agency official before a final decision has been made. It allows the employee to plead the equities of his case, since “bureaucratic superiors, like other human beings, are susceptible to the effects of personal appeals.” Washington v. United States, supra, 137 Ct. Cl. at 350, 147 F. Supp. at 288. This view of the oral reply procedure is set out explicitly in 5 C.F.R. § 752.202(b) (1968):
* * * The right to answer personally includes the right to answer orally in person by being given a reasonable opportunity to make any representations which the employee believes might sway the final decision on his case, but does not include the right to a trial or formal hearing with examination of witnesses. [Emphasis supplied.]
In direct contrast is the description of the hearing procedure involved in O armero v. United States, supra, in which the parties were likened to the litigants in a criminal proceeding for plaintiff had been removed on bribery charges, among others. To permit the decision-maker in Camero to use ex parte statements would have destroyed the impartiality of the hearing officer and the fundamental fairness of the proceeding. The roles played by the hearing officer in Camero and the oral reply officer in this case are considerably different. The first acted as a trier of fact after an adverse decision had been made, while the latter represented the decision-maker in order to hear offerings of extenuating circumstances before the final decision was made. From the record it does not appear that any side other than the plaintiff’s was actively represented at the reply proceeding. Since *351 plaintiff made accusations of personal animosity between himself and Mr. Gnba as part of his presentation, it would seem natural that the reply officer would obtain a statement from Mr. Guba in order to make an intelligent recommendation. Plaintiff did not have a chance to cross-examine his superior when the statement was given, but neither was plaintiff subjected to cross-examination during his presentation. Given the nature of the oral reply proceeding described above, it does not appear that the taking of the ex parte statement by the reply officer violated plaintiff’s right to procedural due process under the circumstances here.
This case is closely similar to Salter v. United States, 188 Ct. Cl. 524, 412 F. 2d 874 (1969), where plaintiff, also an IKS employee, was discharged but complained that after his hearing at the Regional level an affidavit of his former superior was received and considered concerning his job performance. Plaintiff challenged this ex parte communication as a denial of due process. The Civil Service Commission BAR considered this challenge and stated, in part:
* * * it is well established in administrative proceedings of this nature that such evidence is admissible and shall be given such weight as in the Board’s opinion it deserves. [168 Ct. Cl. at 530, 412 F. 2d at 878.]
There was no showing that this procedure was a violation of any agency regulations nor is there such a showing here. The BAR also noted that there was a delay of 8 months between the submission of the ex parte statement and final decision by the Regional Office in Salter. During this time plaintiff did not raise any challenge to it. It is not clear from the record in the instant case just when plaintiff learned about Mr. Guba’s statement to Mr. Duehay but it appears that this statement made in 1967 was first challenged by plaintiff’s brief and motion filed in this case on February 1, 1972.
The final ground for procedural error which the plaintiff presents in this case arises out of the fact that the 90-day notice to improve performance, given to plaintiff on April 4, 1967, listed areas of improvement which differed somewhat from the five grounds for discharge listed in the letter of July 12, 1967. The plaintiff argues that he was misled by *352 these differences and that this was prejudicial. It is clear that the Veterans’ Preference Act, 5 U.S.C. § 7512 (Supp. Ill, 1965-67), requires only that the employee be given “at least 30 days’ advance written notice * * * stating any and all reasons, specifically and in detail, for the proposed action.” Plaintiff in this case received a specific and detailed notice of the proposed action on July 12, 1967, far more than 30 days in advance of his discharge on August 22,1967. He was given adequate time in which to answer the charges made, both orally and in writing, and does not, therefore, appear to have been prejudiced by the differences between the April 4 notice and that of July 12. The adverse action was taken on the July 12, 1967 charges.
The court views this issue as quite similar to the holdings of those cases in which the plaintiffs attempted to overturn discharges that otherwise met the requirements of the Lloyd-La Follette Act or the Veterans’ Preference Act, simply because some of the requirements of the Performance Rating Act, 5 U.S.C. § 2001 et seq. (1958), had not been followed. In Angrisani v. United States, 172 Ct. Cl. 439, 443 (1965), the plaintiff argued that since he held a “satisfactory” rating he could not be discharged on 30 days’ notice since he did not receive the 90-day warning required by section 2005 of the Performance Rating Act of 1950, when an employee’s rating is changed from satisfactory to unsatisfactory. The court held that the PRA is distinct from those other federal personnel statutes that set the standards for when a federal employee may be discharged. When the employee receives the procedural protections itemized in the Lloyd-La Follette Act or the Veterans’ Preference Act, he has no room for complaint. Accord, Armstrong v. United States, 186 Ct. Cl. 539, 405 F. 2d 1275, cert. denied, 395 U.S. 934 (1969); Creamer v. United States, 174 Ct. Cl. 408, 414, cert. denied, 385 U.S. 819 (1966). Since the plaintiff in the case at hand has received the procedural guarantees to which he is entitled, the fact that the 90-day letter differed from the 30-day letter is immaterial. The requirements of 5 U.S.C. § 7512 (Supp. III, 1965-67) stand on their own, and have been met in this case. While plaintiff may have been misled by the differences be *353 tween the letters, he was not prejudiced with respect to the rights guaranteed by the pertinent statutes. Therefore, this ground for error must also be denied.
Plaintiff contends, finally, that the penalty of discharge was too harsh in this case in light of his prior satisfactory ratings and 32 years of Government service. This court has stated on many occasions that the measure of the penalty is within the discretion of the agency. Birnholz v. United States, 199 Ct. Cl. 532 (1972); Heffron v. United States, 186 Ct. Cl. 474, 484, 405 F. 2d 1307, 1312 (1969); Liotta v. United States, 174 Ct. Cl. 91, 96 (1966); De Nigris v. United States, 169 Ct. Cl. 619, 625 (1965). There are, of course, exceptions to this general rule where it can be shown that the decision made by the agency was the product of abused discretion. The test for the abuse of discretion requires a showing by the plaintiff that the penalty is so harsh that there is “an inherent disproportion between offense and punishment.” Heffron v. United States, supra, 186 Ct. Cl. at 485, 405 F. 2d at 1312-13; Olark v. United States, 162 Ct. Cl. 477, 484 (1963).
The principal financial penalty plaintiff has suffered is the loss of pay for having had to retire earlier than he would have done voluntarily. But, he was able to retire at the time of discharge and is, in fact, now receiving annuity benefits from the Government based on his 3'2 years of service. The basis for the discharge here cannot be categorized as minor. Plaintiff’s conduct as a public servant toward the end of his employment fell far short of acceptable standards. It cannot be justified by the alleged provocations of his superior, Mr. Guba. Inefficiency alone has long been held sufficient to warrant discharge. Keim v. United States, 177 U.S. 290 (1900). This is the basic test for discharge. 5 U.S.C. § 7501. The court would be stretching the test in this case and thereby infringing on an area of administrative discretion if it were to find the penalty assessed to be too harsh as applied to plaintiff. Nor has he shown that the penalty grossly exceeded the one set in a standard table of penalties as was the case in Daub v. United States, 154 Ct. Cl. 434, 292 F. 2d 895 (1961), and Cuiffo v. United States, 131 Ct. Cl. 60, 137 F. Supp. 944 *354 (1955). Therefore, the court is presented with no sound reason to find that the agency abused its discretion in discharging plaintiff, whose claim for relief on this basis must also be denied.
Defendant pleaded two affirmative defenses — collateral estoppel, based on a District Court decision, and laches. Neither defense was briefed nor argued. They are considered abandoned and therefore not discussed here.
In summary, the decision of the Civil Service Commission in sustaining the charges against plaintiff, and removing him to promote the efficiency of the service, was supported by substantial evidence and was not arbitrary or capricious and no essential unresolved issues of fact pertain thereto. Plaintiff’s removal from his position was not procedurally defective. The penalty of removal was not excessive under the circumstances, nor an abuse of discretion. Defendant is entitled to judgment as a matter of law.
For all the foregoing reasons, defendant’s motion for summary judgment is granted and plaintiff’s cross-motion is denied. The petition is dismissed.

 Plaintiff’s failure to exhaust was excused when he was not told of his right to appeal and where the subject proceeding was entirely void and invalid.

 Plaintiff’s failure to exhaust was excused when the agency wrongfully told him he had no legal rights or status.

 Plaintiff’s failure to exhaust by appeal to CSC was excused where the agency had notified him that he might appeal through either the agency or the CSC, but was not entitled to both, and as a result, plaintiff opted for the agency appeal and was later wrongfully told that he should have gone to the CSC in order to exhaust his administrative remedies.

 See note 3 supra.

 Plaintiff was not told the effective date of his discharge until it was too late to file an appeal to the CSC.