**Robert I. HUTSON, Plaintiff,**

v.

**UNITED STATES, United States Customs Service, the Honorable William Von Raab, Commissioner of Customs, and the Honorable John V. Linde, District Director of Customs, Boston, Defendants.**

Court No. 87–09–00962.

United States Court of International Trade.

Aug. 26, 1988.

in Charge, International Trade Field Office, Civil Div., Commercial Litigation Branch, U.S. Dept. of Justice, New York City, James A. Curley, for defendants.

## OPINION

TSOUCALAS, Judge:

Plaintiff, Robert I. Hutson, filed this action to contest the revocation of his privilege of access to Customs Security Access Zones at Logan International Airport, Boston, Massachusetts ("Logan Airport"). John V. Linde, the District Director of Customs, Boston District, determined that continuation of plaintiff's security zone access privileges would endanger the revenue or security of the area within the meaning of 19 C.F.R. 6.12a(j)(1)(iv).[1]

The action is now before the Court on plaintiff's motion for judgment on the administrative record, pursuant to Rule 56.-1(a) of the Rules of this Court.

### Background

In March, 1986, the United States Customs Service ("Customs") adopted regulations governing access to secured areas at airports throughout the United States. *See* 19 C.F.R. § 6.12a; Tr. at 38. Pursuant to these regulations, the plaintiff, an aircraft mechanic for Trans World Airlines, filed for and received an identification card allowing him unescorted access to the secured areas at Logan Airport. Such access allowed plaintiff to enter and exit the Customs security area without being subjected to a Customs examination. Administrative Record, Hearing Transcript at 8, 30 (hereinafter "Tr. at ___.").

On October 3, 1986, the District Director of Customs revoked plaintiff's access privileges, thereby exercising his discretionary powers under 19 C.F.R. § 6.12a(e)(1), upon finding that plaintiff had violated 19 U.S.C.

Sullivan & Lynch, Herbert J. Lynch, Boston, Mass., for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney

**1.** 19 C.F.R. § 6.12a(j)(1), provides, in pertinent part, that:

An approved identification card, strip or seal may be removed from an employee by any Customs officer designated by the district director. In addition, the district director may revoke or suspend access to the Customs security area for any of the following reasons:

. . . . .

(iv) The continuation of privileges would, in the judgment of the district director, endanger the revenue or security of the area;

§ 1592 (1982).[2] Tr. at 67, 76. This violation was the sole reason for revoking plaintiff's access privileges.

The conduct which led to the revocation was revealed in a hearing held at plaintiff's request for reconsideration. Plaintiff arrived at Logan International Airport from a trip to Europe on November 25, 1985, and was subjected to a Customs examination by a Customs Inspector.[3] Tr. at 7–8. Plaintiff, in a Customs Declaration presented to the Inspector, claimed that he was importing plastic and vinyl tote bags valued at $700, along with other merchandise. Administrative Record, Agency Exhibits 1, 2 (hereinafter "AX ___."). Plaintiff then told the Customs Inspector that the importations were non-commercial and not for resale in the United States. Tr. at 10. He also told the Customs Inspector that he had only forty bags and no receipts. *Id.*

Upon further examination, however, the Customs Inspector discovered that there were, in fact, forty-nine (not forty) bags, and that the bags were counterfeit copies of Louis Vuitton luggage.[4] Tr. at 12–13, 16. The Customs Inspector also discovered eleven undeclared Gucci wallets and an undeclared key chain. Tr. at 14; AX 6. In plaintiff's handbag, the Inspector also found a receipt and another Customs Declaration that was virtually identical to the Customs Declaration submitted, except that the value of the bags was stated as $300 and not $700 as the declaration he submitted showed. Tr. at 10–11; AX 2, 3.

The plaintiff did not accurately declare the value of the merchandise on his Customs Declaration Form. Ax 1–4, 13. The value of the bags was actually closer to $1,500 than $700. Tr. at 13; AX 4. He also admitted misrepresenting to the Inspector that the goods were not for resale when he had actually intended to resell them. Tr. at 13–14; AX 14 at Findings of Fact of the Hearing Examiner.

U.S. Customs Import Specialist James Lynch valued the bags at $8,700 foreign value and $12,375 domestic value; the wallets at $1,900 foreign value and $2,750 domestic value; and the key chain at $35 foreign value and $50 domestic value. AX 6, 11; Tr. at 32–33.

The hearing examiner recommended that the revocation be upheld stating: "I find the District Director's [Mr. Linde's] decision to revoke [plaintiff's] privilege of access to Customs security areas at Logan International Airport to be a correct and supportable decision under the regulations." Administrative Record, Attachment to December 29, 1986 letter to Joel Mish at 2. On January 27, 1987 the hearing examiner forwarded his decision to the Regional Commissioner who in turn sent it to the Assistant Commissioner of Customs, Office of Inspection and Control, Washington, D.C., who affirmed the revocation. *See Plaintiff's Brief in Support of Plaintiff's Motion for Judgment on Review of Administrative Determination upon an Agency Record* at 2 (hereinafter "*Plaintiff's Brief* at ___.").

Plaintiff maintains that the determination to revoke his access permit should be overturned, irrespective of his breach of § 1592, on the following grounds outlined in 5 U.S.C. § 706 (1982): (1) that the decision was not supported by substantial evidence in the record; and (2) that the agency action was arbitrary, capricious, an abuse of discretion and not in accordance with law.[5]

---

2. § 1592. Penalties for fraud, gross negligence, and negligence
    (a) Prohibition.—
        (1) General rule.—Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence—
(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—
    (i) any document, written or oral statement, or act which is material and false, or

    (ii) any omission which is material
    . . . .

3. The events which led to the § 1592 violation occurred before plaintiff had secured an access permit.

4. It has been stipulated that the bags were counterfeit. AX 13.

5. Plaintiff also claimed that the Customs Regulations, 19 C.F.R. § 6.12a, are in excess of statutory jurisdiction, authority, or limitation, or

## Discussion

■ The question before this Court is whether Customs properly revoked plaintiff's access permit solely on the grounds of the § 1592 violation.[6] The District Director's revocation decision must be supported by substantial evidence and be in accordance with law. 5 U.S.C. § 706(2)(E) (1982); *see Baltimore Security Warehouse Co. v. United States,* 9 CIT 641, 644–45 (1985). This standard requires the Court to uphold the agency action as long as there is such evidence in the record as a reasonable mind would accept to support the conclusion reached. *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *see also American Spring Wire Corp. v. United States,* 8 CIT 20, 21, 590 F.Supp. 1273, 1276 (1984), *aff'd sub nom. Armco, Inc. v. United States,* 3 Fed.Cir. (T) 123, 760 F.2d 249 (1985).

Plaintiff claims that his transgression of § 1592 "by itself, does not represent conduct that suggests that the violator presents a threat to the security of the Customs Security Access area or endangers the revenue" under 19 C.F.R. § 6.12a. *Plaintiff's Brief* at 16. In support of this argument, plaintiff claims that when he violated § 1592, he was found to be only "grossly negligent," which, under the regulations is defined as being "without *intent* to defraud the revenue or violate the laws of the United States."[7] 19 C.F.R. § 171, app. B(B)(2) (emphasis added). In other words, plaintiff contends that his conduct lacked the requisite intent which would justify the District Director's decision to revoke his privileges under the regulations. Therefore, plaintiff concludes, "[i]t is difficult to discern how an act which was done without intent to defraud the revenue or

violate the laws of the United States makes [plaintiff] a danger to the revenue or the security of the airport area." *Plaintiff's Brief* at 17.

This Court must sustain the agency action if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *American Spring Wire,* 8 CIT at 21, 590 F.Supp. at 1276 (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951)). The District Director of Customs has the responsibility of assuring that the Government receives its proper share of revenue and that the Customs security area at the airport is not endangered. Under the regulations, "[a]n approved identification card, strip, or seal shall not be issued to any person whose employment, if necessitating access to the Customs security areas will, *in the judgment of the district director,* endanger the revenue or the security of the areas." 19 C.F.R. 6.12a(e)(1) (emphasis added).

Plaintiff's argument that he acted without the requisite intent is inapposite. At the hearing, Customs introduced ample evidence that plaintiff had violated 19 U.S.C. § 1592 by misrepresenting the value and the amount of goods he had brought into the country. In fact, plaintiff has conceded the violation. Therefore, although he was found only to be grossly negligent for purposes of the statute, plaintiff unquestionably engaged in deliberate acts of misrepresentation which is precisely the type of conduct the secured area is designed to avert. As the defendants rightly emphasize, the plaintiff acted "intentionally" when he intentionally undervalued his shipment. *See Defendants' Brief in Opposition to the Plaintiff's Motion for Judg-*

---

short of statutory right. However, the Court finds this claim to be wholly without merit.

**6.** Customs admitted to improperly basing its decision to revoke plaintiff's permit on "criminal activity which is a matter of record." Administrative Record, Joint Exhibit 1; Tr. at 76. The basis for discontinuing plaintiff's access privileges, and the only issue here, is whether the conduct which violated § 1592 is a sufficient justification for terminating plaintiff's privilege of access.

**7.** The definition of gross negligence in the Customs Regulations is as follows:

an act or acts (of commission or omission) done with actual knowledge of or wanton disregard for the relevant facts and with indifference or disregard for the offender's obligations under the statute, but without intent to defraud the revenue or violate the laws of the United States.

19 C.F.R. § 171, app. B(B)(2); *see also* Tr. at 53–54.

**1198**

ment upon the Agency Record and in Support of Defendants' Request for Judgment at 11–12. Based on these facts, the Court finds the revocation decision pursuant to 19 C.F.R. § 6.12a to be supported by substantial evidence.

Plaintiff further maintains that the agency action was arbitrary and capricious and otherwise not in accordance with law since the violation of 19 U.S.C. § 1592 occurred on November 25, 1985 and was allegedly known by the District Director in March 1986 when he approved plaintiff's application for the permit. Plaintiff argues that since the District Director initially granted the permit to plaintiff sometime after the § 1592 violation, he must have found plaintiff not to be a danger to the revenue or security of the area. Therefore, plaintiff continues, the revocation of his permit was arbitrary, capricious, and not in accordance with law.

Under the arbitrary and capricious standard, this Court's scope of review is a narrow one. See Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc., 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974). The Court, to uphold the agency action, must inquire whether the rationale of the agency is both discernible and defensible. Id.; Trans–Pacific Freight Conference of Japan/Korea v. Federal Maritime Commission, 650 F.2d 1235, 1251 (D.C.Cir.1980), cert. denied, 451 U.S. 984, 101 S.Ct. 2315, 68 L.Ed.2d 840 (1981). In so doing, the Court may not substitute its judgment for that of the agency, but need only assure itself the decision was rational and based on consideration of relevant factors. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 836 (1971).

At the administrative hearing held November 6, 1986, the District Director unambiguously stated that he was unaware of plaintiff's § 1592 violation at the time the permit was issued; it was brought to his attention by the Assistant District Director for Inspection and Control while reviewing plaintiff's application.[8] Tr. at 27–31. The Court, therefore, finds it reasonable that Customs may want to deny an individual privileged access to secured areas when that person has attempted to bring goods into this country without either declaring their correct value or their existence at all, and has admittedly made material misrepresentations to that effect.

Based on a thorough review of the record, the Court is of the opinion that the action taken by Customs was supported by substantial evidence, was in accordance with law, and was not arbitrary and capricious. The severity of the punishment imposed was within the parameters provided by the applicable statute and regulations. When a penalty chosen by an agency is within the range of sanctions provided by applicable disciplinary regulations, the severity of the sanction imposed is within the discretion of the agency. Ricci v. United States, 507 F.2d 1390, 1393 n. 3, 205 Ct.Cl. 687 (1974) (citing De Nigris v. United States, 169 Ct.Cl. 619, 625 (1965); Grover v. United States, 200 Ct.Cl. 337, 353 (1973)). In view of the foregoing, the Court will not substitute its judgment for that of the agency.

### Conclusion

There being no procedural irregularities in the agency's action, no abuse of discretion, and substantial evidence on the record to support the decision by Customs, plaintiff's motion must be denied and judgment entered in favor of defendants.

---

8. The District Director, after becoming aware of the plaintiff's violation of 19 U.S.C. § 1592, decided that the continuation of privileges on behalf of plaintiff would, in his judgment, endanger the revenue or security of the area.